**TAGGED OPINION**



## ORDERED in the Southern District of Florida on February 13, 2007.

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

PAN AMERICAN HOSPITAL
CORPORATION and PAN AMERICAN
MEDICAL CENTERS, INC.,

Case Nos.04-11819-BKC-AJC
and 04-11820-BKC-AJC

Jointly Administered
CHAPTER 11

                Debtors.
_____/

### ORDER DETERMINING THE NATIONAL LABOR RELATIONS BOARD IN VIOLATION OF 11 U.S.C. §362

FOR THE REASONS SET FORTH BELOW, this Court finds that the National Labor Relations Board ("NLRB") violated 11 U.S.C. §362. The following constitutes the Court's findings of fact and conclusions of law as required by FRBP 7052.

### FINDINGS OF FACT

On or about October 24, 2006 the Debtor filed an Emergency Motion for Entry of an Order (a) Authorizing and Scheduling a Sale of Assets Free and Clear of Liens Claims and Encumbrances; (b) Approving Bidding Procedures and Stalking Horse Protections; (c) Approving Notice of Sale; and (d) Scheduling an Auction to Consider Competitive Bids. On November 1, 2006, the Court

entered a Corrected Order granting the Debtor the relief requested (the "Corrected Order"). In the Corrected Order, the Court scheduled an in-court auction of the assets of the Debtor for Tuesday, November 21, 2006 at 2:30 p.m. so that it could approve the bid which would provide the highest and best offer. Attached to the Corrected Order was a Notice of Opportunity to Submit Bids for substantially all of the assets of the Debtor.

To enter the bidding process, a qualified bidder was required to deliver no later than 4:00 p.m. on November 14, 2006 a fully executed Asset Purchase Agreement ("APA") in the form approved by the Court and a good faith deposit in the sum of five million dollars.

The Debtor, the Official Committee of Unsecured Creditors (the "Committee") and the Examiner worked to encourage various entities to participate in the bidding process.

On or about November 8, 2006, the Regional Director of the NLRB by and through its trial counsel filed a Notice of Pendency of Unfair Labor Practice Charges (the "Notice"). The Notice was filed as a pleading in this case and served on parties in interest including certain entities that had expressed an interest in engaging in the bidding process as set forth under the Corrected Order. The Notice specifically states, in pertinent part, as follows:

> You are hereby notified that anyone who becomes a successor to said debtor with knowledge of the aforementioned unfair labor practice proceedings, may be required, under the National Labor Relations Act, 29 U.S.C. Sec. 151, et seq., to remedy any unfair labor practices found, by inter alia, making whole employees for losses suffered on account of any such unfair labor practices committed by the debtor. See *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973).
>
> This notice is intended to advise potential purchasers of the Debtor's assets of their potential liability, so that the price of the Debtor's assets may be reflective thereof...

Shortly after the Notice was filed by the NLRB, the Committee filed an Emergency Motion to Strike the National Labor Relations Board's Notice of Pendency of Unfair Labor Practice Charges and For Order to Show Cause under Fed. R. Bankr. P. 9011 (c) (1)(B) (the "Motion to Strike").

In the Motion to Strike, the Committee alleged that the NLRB sent similar types of notices to at least two of the larger not-for-profit acute care hospitals in Miami-Dade County during the pendency of the bankruptcy and as early as April, 2005.  The Committee also stated that it had transmitted a cease and desist letter to the NLRB in 2005 advising it that the dissemination of the Notice was a flagrant violation of the bankruptcy process and clearly had no legal merit given the creation of the Bankruptcy Code in 1978 and particularly the provisions of 11 U.S.C. §363 governing the sale of estate property free and clear of claims and encumbrances.

The Motion to Strike was heard by the Court on an emergency basis on Monday, November 14, 2006 at 11:30 a.m.  At the hearing, the Committee argued that the NLRB's notice was not well grounded in law or in fact, and contended the Supreme Court case of *In re Golden State Bottling Company v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), upon which the NLRB based its Notice, was clearly distinguishable from this instant proceeding as *Golden State Bottling* did not involve a bankruptcy case.  The Committee relied upon the ruling made in *In re Creative Restaurant Management*, 141 B.R. 173 (Bankr. W.D. Mo. 1992).  *Creative Restaurant* analyzed 11 U.S.C. §363 governing the sale of estate property free and clear of all claims and encumbrances and specifically defined the bankruptcy court's authority to authorize an asset sale free and clear of remedies sought by the NLRB, particularly, regarding unfair labor practices involving reinstatement and back pay.  The Committee alleged that the Notice the NLRB served on interested purchasers could have had a serious impact and chilling effect on the bidding process, nullifying the hard work

that the Debtor, Committee and Examiner had done in terms of encouraging a number of qualified entities to participate in the sale proceeding and discouraging certain specific not-for-profit entities from participating in the process. The Committee alleged that the Notice lacked any legal sufficiency and was not grounded in law or fact and the Notice needed to be stricken before the deadline for purchasers to participate in the bidding process. In addition, the Committee requested the entry of an order to show cause under FRBP 9011 (c)(1)(B) as to why sanctions should not be imposed on the NLRB.

The NLRB argued that essentially there was "no harm, no foul" and pointed out that immediately upon the filing of the Motion to Strike and just before the hearing on the Motion to Strike, the NLRB had filed a Notice of Withdrawal of the Notice and had already provided such Notice of Withdrawal to as many interested parties and potential purchasers of whom the NLRB had knowledge.

The Court entered both an Order to Show Cause under FRBP 9011(c)(1)(B) requiring the NLRB to appear at a hearing on January 4, 2007 to show cause why sanctions should not be assessed against it pursuant to FRBP 9011(c)(1)(B) and why its conduct was not in violation of 11 U.S.C. §362. Further, the Court entered an Order on the Motion to Strike authorizing the withdrawal of the Notice and granting the Motion to Strike. In its order, the Court expressed concern with the chilling effect of the Notice sent by the NLRB which included an unwise and counterproductive position. Further, the Court believed the Notice may have had a chilling effect on the bidding to the detriment of creditors, including the creditors on behalf of whom the NLRB acted, and to the benefit of no one. The Court took notice as well, that the NLRB had considered a potential objection to the proposed sale under 11 U.S.C. §363 but it had not elected to file such an objection. Rather the filing of the

Notice may very well also have been a potential violation of the automatic stay under 11 U.S.C. §362.

Additionally, in the Order on the Motion to Strike, the Court noted that *Golden State Bottling* did not involve a bankruptcy case and that a review of the United States Supreme Court jurisprudence revealed a more instructive decision in a bankruptcy case involving the NLRB styled *Nathanson, Trustee in Bankruptcy v. National Labor Relations Board,* 344 U.S. 25 (1952) in which the Supreme Court held that a back pay award against the debtor is considered to be a claim in bankruptcy. *Nathanson*, although decided under the Bankruptcy Act, was more relevant to the issues presented in the Motion to Strike than *Golden State Bottling*. The Court believed that the *Nathanson* case was instructive to the extent that the NLRB's claim is treated similar to other pre-petition unsecured claims under the Bankruptcy Code and is more applicable than *Golden State Bottling*. The Court also reexamined the Committee's reliance on *Creative Restaurant Management* and accepted the reasoning therein, notwithstanding the fact that the court in *Creative Restaurant Management* subsequently vacated its ruling, erroneously this Court thinks, for mootness due to a settlement between the parties.[1]

_____

[1]  On July 15, 1992, the court in *Creative Restaurant Management, Inc.*, 141 B.R. 173 (Bankr. W.D. Mo. 1992) entered an order in which paragraph 2 states as follows:

> The Court's memorandum opinion filed May 20, 1992, concerning the impact of the free and clear sale from CRM to Haddad Restaurant Group, Inc. ("HRG") upon rights and obligations arising out of the National Labor Relations Act shall be, it is hereby vacated as moot, and with no precedential value in this or any other proceeding.

This Court rejects this Order dated July 15, 1992 and its attempt to vacate the prior order, relying upon Justice Scalia's opinion in *In re Bonner Mall Partnership*, 513 U.S. 18, 29 (1994) in which the Supreme Court held that mootness by reason of settlement does not justify vacatur of a judgment under review. Accordingly, this Court accepts *Creative Restaurant* in its initial opinion, rejecting the view espoused in the July 15, 1992 Order that the *Creative Restaurant* opinion is not precedential.

On December 20, 2006, the NLRB filed a nineteen page Response to the Order to Show Cause as to Why the Filing of the Notice of Pendency of Unfair Labor Practice Charges Was Not in Violation of 11 U.S.C. §362 and as to Why it Should Not be Sanctioned Under Rule 9011(c)(1)(B) of the Federal Rules of Bankruptcy Procedure (the "NLRB Response"). The NLRB Response argued that the NLRB did not violate the automatic stay because (i) the NLRB's unfair labor practice proceedings are exempt from the automatic stay under 11 U.S.C. §362 (b)(4); (ii) that the automatic stay does not apply to filings in bankruptcy court; and (iii) that sanctions under FRBP 9011(c)(1)(B) are unwarranted because (a) the Board did not present the Notice for an improper purpose; (b) that the NLRB's position is not objectively frivolous; and (c) the NLRB voluntarily took immediate corrective action.

The Court takes judicial notice that the NLRB has filed a pre-petition Proof of Claim for back pay and restitution on behalf of certain employees of the Hospital.

## CONCLUSIONS OF LAW

Upon the Court's *sua sponte* order to show cause, and having considered the NLRB Response, the Court concludes the NLRB violated the automatic stay under 11 U.S.C. §362. However, no sanctions will be imposed under FRBP 9011.

Though the NLRB did not argue in the NLRB Response that sanctions may not be awarded against a represented party under FRBP 9011, it did so in open court. Careful reading of FRBP 9011(c)(2)(A) reveals that monetary sanctions may not be awarded against a represented party for a violation of subsection (b)(2) which deals with claims defenses and other legal contentions that are of a frivolous nature. Contrary to the argument of counsel for the Committee, the same restrictions apply to sanctions under FRBP 9011(c)(1)(B). Although the Court believes that the Notice reflected

6

an attempt by the NLRB to chill the §363 process, the Federal Rules of Bankruptcy Procedure do not authorize sanctions against a party represented by an attorney, even if counsel acted in accordance with instructions from its client.

However, having taken judicial notice of NLRB's pre-petition claim herein, it is obvious to this Court that when the Notice was served upon interested purchasers and specifically set forth that it "is intended to advise potential purchasers of the Debtor's assets of the potential liability, so that *the price for the Debtor's assets may be reflective thereof"* (emphasis added), it was not only intended to chill the bidding process, but it inferred that potential successor liability existed and should be considered when bidding. Such an act is a violation of 11 U.S.C. §362.

The NLRB argues that its conduct in filing the Notice falls under the exception to the automatic stay under §362(b)(4), excepting governmental units from the stay so that they may exercise their police and regulatory powers. While the legislative history of §362(b)(4) reports a noble purpose and wide scope, the exception is intended to avoid a procedural bar where a governmental unit is suing the debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws or attempting to fix damages for violation of such a law, not to collect a pre-petition debt on behalf of a community of creditors. Cases such as *In re Kovacs*, 469 U.S. 274 (1985) demonstrate that (b)(4) was not intended to allow governments to protect a pecuniary interest in property of the debtor or property of the estate. This Court is convinced that the NLRB, in filing the Notice, was attempting to enforce its pecuniary interest in property of the Debtor by asserting successor liability onto the purchaser.

The Court must preliminarily state that while it has adopted the reasoning of *Creative Restaurant Management*, the Court believes that the NLRB has complete and total independent

7

jurisdiction in the area of labor relations relative to the activities of the purchaser of a business or property in bankruptcy from the date of acquisition of such business forward. The NLRB does not, however, have a right to assert successor liability to a *bona fide* §363 purchaser for reinstatement and back pay incurred prior to the sale. The NLRB's emphasis on *Golden State Bottling* as the source of its power to assert successor liability claims against a purchaser who has purchased the assets of a business pursuant to 11 U.S.C. §363(f) is misplaced. Congress provided Bankruptcy Courts with exclusive jurisdiction to approve such sales. 28 U.S.C. §157 and 28 U.S.C. §1334.

Each case cited by the NLRB, but for *In re Circle City Asphalt,* 2000 WL 1250947, are cases that do not involve the use of §363 of the Code to implement a sale free and clear of all interests and the Court therefore finds them unpersuasive on the issue before the Court. Moreover, *Circle City Asphalt*, which involves a bankruptcy case, is an opinion that, unfortunately for the NLRB, does not articulate what sort of successor liability was reserved for the benefit of the NLRB. Accordingly, the Court does not find *Circle City* reliable or instructive.

Section 363 of the Code provides authorization for this Court to approve the purchase of the Debtor's assets free and clear of liability of debt claimed by the NLRB in its various proofs of claims. The *Creative Restaurant Management* case is instructive on both the issue of back pay and on reinstatement claims. This Court adopts its reasoning in that the back-pay claim is an interest which can be reduced to a claim for a right to payment. Similarly, this Court holds that the reinstatement claims are also interests which can be reduced to a claim since reinstatement is a right to an equitable remedy for breach of performance if the breach gives rise to a right to payment.

*Golden State Bottling* was a case that was decided by the Supreme Court prior to the enactment of the 1978 Bankruptcy Code and before Congress decided to grant rights under §363.

8

Section 363 assists bankruptcy courts in maximizing recovery to creditors, since purchasers can enter a judicial arena where they are ultimately protected from successor liability in an attempt to encourage the sale of assets and enhance pro rata return to all pre-sale creditors. In its wisdom, Congress enacted §363 to provide incentives for purchasers to come into the bankruptcy court and buy troubled businesses for more value than that which might be affixed to the business outside of a Bankruptcy Court. The aspect of receiving free and clear title for assets stands as one of the bedrocks of enhancing recovery to creditors in distressed business environments. Thus, the NLRB cannot compare successor liability issues for back pay and reinstatement in a non-bankruptcy setting to that of a bankruptcy setting which has the protections afforded by 11 U.S.C. §363. Such a comparison is inopposite to the policy of §363 and the spirit of the Code.

This Court finds further support in *Nathanson.* Although the NLRB argues that the Supreme Court merely determined that the debt owed to the NLRB is not a debt for priority purposes, this Court interprets *Nathanson*'s holding to be far beyond what the NLRB advocates. This Court believes that *Nathanson* held that the NLRB was a creditor with respect to back pay awards and that such back pay awards rose to the level of a provable claim. Thus, it appears the NLRB has had ample experience in bankruptcy matters and should have known that a §363 sale of the Hospital would not impute successor liability for back pay and reinstatement. Yet the NLRB, through the Notice, may well have intentionally thrown ice water on a pending sale to the detriment of all creditors including the specific creditor community it is representing. There is no doubt that a sale was eventually properly conducted and that a successful purchaser has in fact purchased the Hospital and has received the protection provided by 11 U.S.C. §363(m). One may never know if the Notice chased away another bidder that might have kept this Hospital as a non-for profit hospital instead of selling

this Hospital to a for-profit entity. If that is the case, it is truly the public interest that is now harmed by the NLRB's conduct.

The Court also speculates on the possibility of the NLRB having invoked the law of unintended consequences. If the NLRB did in fact scare away potential not-for-profit hospital bidders, as reported to the Court earlier in these proceedings, and thus left the Hospital for acquisition by the for-profit operators, then the consequential reduction in staff by the successful for-profit purchaser, which the Court announced on the record that it was hopeful of avoiding, seems to be the ultimate result the NLRB achieved. As reported in the Miami Herald,[2] there is the possibility that about 100 employees will likely be losing their jobs under the new for-profit operator. The possible loss of jobs under the new for-profit operator, if caused by the NLRB actions, will have harmed the very persons that the NLRB was trying to help and protect. It shall probably never be known if this is the case, but as poet John Greenleaf Whittier said in his poem Maud Muller, "For of all sad words of tongue or pen, the saddest are these - it might have been."

The Court is mindful of the fact that the NLRB withdrew the Notice prior to the hearing, however, it is not at all clear that all potential purchasers received notice of the withdrawal. Perhaps on the basis of the filing made on November 8, 2006, these purchasers may have decided to not participate in the bidding process. For that reason, and on the Court's own initiative, the Court believes that it has the power to determine the NLRB to have been in violation of 11 U.S.C. §362 and to have been in civil contempt for filing the Notice with an improper purpose.

Accordingly, it is

---

[2]Miami Herald, Friday February 9, 2007, page 1C.

ORDERED AND ADJUDGED as follows:

1.      That the NLRB is sanctioned *nunc pro tunc*, to the date of the filing of the Notice, $1,000,000.00 with the proviso that it may purge itself of this sanction by withdrawing the Notice.

2.      The Court taking judicial notice that the NLRB has, in fact, withdrawn the Notice, the $1,000,000.00 sanction imposed is therefore purged and the NLRB is excused from any further fines or penalties.

# # #

Copies furnished to:
Frank P. Terzo, Esq.
KATZ BARRON SQUITERO FAUST
2699 S. Bayshore Drive, Seventh Floor
Miami, Florida 33133

[Attorney Terzo is directed to serve a copy of this Order upon all parties in interest and file a certificate of service with the Court]